No.——

First Circuit

LUKENS STEEL COMPANY v. DOHERTY

(Dec. 7, 1927. Opinion and Decree.)

(Jan. 7, 1927. Rehearing Refused.)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Sales—Par. 118, 218.**

The delivery of sheet steel in accordance with the usages and customs of the trade is sufficient compliance with the order even though it could not be used for the purposes for which it was intended due to lack of facilities of the buyer to properly shape it after received; both parties acting in good faith.

Appeal from District Court, Parish of East Baton Rouge. Hon. Wm. Carruth Jones, Judge.

Action by Lukens Steel Company against William S. Doherty.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Taylor, Porter, Loret & Brooks, of Baton Rouge, attorneys for plaintiff, appellee.

Warren O. Watson, of Baton Rouge, attorney for defendant, appellant.

LECHE, J. Defendant in the above cause, wishing to engage in the manufacture of concrete sewer pipe, ordered from plaintiff a lot of rolled steel plates to make molds or forms in which to cast the concrete of which such sewer pipes were to be made. Specifications as to sizes and dimensions were drawn up by S. P.

Walsh, who was at the time associated with defendant, and were turned over to the plaintiff that it might fill the order. The steel was in due time shipped and delivered to defendant, who after unsuccessfully attempting to build the required forms or molds, refused to pay for same. Plaintiff then instituted the present suit to recover the amount of its claim in the sum of seven hundred and ninety-one 30/100 dollars. The defense is in substance, that the order was not filled according to specifications and that the steel could not be used for the purpose intended.

The District Court rendered judgment in favor of plaintiff and defendant has appealed.

The salient facts pertinent to the controversy between the parties, as shown by the record, are: That defendant had in view, a contract to supply the City of Baton Rouge with concrete sewer pipe and, for that purpose, intended to engage in the manufacture of such pipe. It is not shown whether he had any experience in making the same, but he found after due inquiry, that the molds or forms necessary to cast the pipe were quite costly, and believing that he would thereby save a considerable expense in carrying out the undertaking, he determined to buy the required material and proceed to build himself, the forms in which he would cast the concrete sewer pipe. It was then that his associate, S. P. Walsh, drew up specifications for material upon which the sheet steel, herein sued for, was rolled and furnished by plaintiff. It does not appear to what extent Walsh was interested, if at all, in the proposed building of the forms and in the manufacture of the pipe, but that is not an issue in the case. Walsh died before the trial of the present suit and therefore defendant could not get the benefit of his testimony.

As soon as defendant received the steel from plaintiff, he engaged a mechanic to shape the forms and weld the sheets together. It appears that the mechanic could not succeed for the reason, as stated by him, that the sheets of steel were rolled with irregular edges, each sheet varying in width from one-eighth to seven-eighths of an inch. Thereupon defendant, believing that the specifications upon which he had based his order, had not been followed by plaintiff, complained to plaintiff and finally refused to pay. Defendant knew noting about the building of forms out of rolled sheets of steel, and the mechanic or mechanics whom he employed, were likewise inexperienced. Plaintiff's manager and agents assuming that the forms would be shaped and welded by experienced workmen, filled the order according to the customs of the trade, and it is shown by the testimony of Dunn and Thorgesen, two practical and experienced mechanics whose expertness is not questioned, that the order was properly filled by plaintiff.

It is shown by these experts that to shape and weld forms, out of sheet steel, whether cylindrical or conic, is quite difficult and that it requires a great deal of skill and experience, especially on the part of the mechanic known in the trade as a "fitter up," whose duty is to take the rolled sheets and set them up to the proper form. Then in welding the two edges, account must be taken of the contraction and expansion of the metal, which might cause the sheets to buckle and mar the shape which is intended to be formed. It seems that in rolling sheets of steel, owing to the varying densities of the metal, the edges will vary, that these variations can easily be offset by the ex-

pert welder and that it is an accepted condition in the trade, to furnish steel in that shape.

Our apprecaition of all the evidence in the case is that both parties acted in good faith, that plaintiff filled the order in accordance with the usages and customs of the trade and that defendant is the victim of his own lack of knowledge of such usages and customs.

We believe that the judgment appealed from is correct and it is therefore affirmed.